[No. 38851. Department Two. March 31, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. SYLVESTER E. McCOY, *Appellant*.*

*Reported in 425 P.2d 874.

McGavick, Betzendorfer, Hemmen & Bottiger, by M. H. Hemmen (Appointed counsel for appeal.), for appellant.

John G. McCutcheon and Gary Cronk, for respondent.

OTT, J.—October 2, 1965, Sylvester E. McCoy was injured in an automobile accident. He was taken in an unconscious condition to the Lakewood General Hospital by ambulance. At the hospital, while still in a state of unconsciousness, he was undressed by two nurses preparatory to his being examined. When one of his socks was removed, a package, which was later found to contain marajuana, fell to the floor. At the time of this incident, no physician or surgeon was present. The package was given to a state trooper who was investigating the accident. The prosecuting attorney for Pierce County charged Sylvester E. McCoy with the crime of unlawful possession of narcotics. The jury returned a verdict of guilty as charged. From the judgment and sentence entered upon the jury's verdict, the defendant has appealed.

Appellant's first assignment of error is that the court erred in permitting the nurses to testify relative to marijuana, contending that testimony of nurses, as well as physicians and surgeons, comes within the ban of the statute.

RCW 5.60.060 provides in part:

(4) A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient . . . .

RCW 10.58.010 provides: "The rules of evidence in civil actions, so far as practicable shall be applied to criminal prosecutions." In *State v. Miller*, 105 Wash. 475, 178 Pac. 459 (1919), this court held that the privilege can be invoked in criminal cases.

In *State v. Fackrell*, 44 Wn.2d 874, 877, 271 P.2d 679 (1954), we said: "The privilege is for the benefit of the

patient to the end that he will be encouraged to disclose his ailments to a physician so that they may be properly treated."

■ The nurses were not acting under the direction of any physician or surgeon. The patient had been brought by ambulance to the hospital emergency room. The nurses in the emergency room performed those services which were necessary to be performed on behalf of a person admitted through the emergency room of the hospital. In this regard, the nurse in charge testified that she checked Mr. McCoy's blood pressure, pulse and respiration and that she removed his clothes in order that the physician could examine him. As of the moment when the package was discovered, no physician or surgeon had yet been in attendance or had seen the patient. Therefore, the relationship of physician-patient had not yet been effected. Since the physician-patient relationship had not been accomplished, the ban of the statute does not here apply.

Appellant's final assignment of error is, "the court erred in allowing admission of appellant's confession or admission by reason of its having been gained in violation of his constitutional rights under the state and federal constitutions."

Pursuant to Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0, the trial court conducted a hearing in the absence of the jury to determine the voluntariness of the appellant's alleged confession. Officer Ward Archer testified on behalf of the state at this hearing as follows:

Q. Did you talk to Mr. McCoy at the time you made the arrest? A. Yes, I did. Q. What did you tell him? A. I advised him of the warrant, I read the warrant to him, advised him of his civil rights, right to remain silent, right to a trial by jury, right to an attorney, a court-appointed attorney if he didn't have sufficient funds. Q. Did he say anything to you at this time? A. No, he did not. Q. And—THE COURT: Just a minute, now. You advised him what the charges were, is that right? A. Yes. THE COURT: And the right to remain silent? A. Yes. THE COURT: The right to have counsel? A. Yes. THE COURT: What else was it? A. Right to a trial by jury, that

anything he might say might be used against him in a court of law, he was advised of this. Q. Did you also advise him that the court would appoint counsel if he didn't have the funds? A. Yes, sir. Q. Now, where was this done? A. It was in a room of the Mountain View Hospital where he was confined as a patient. Q. Okay. Did you then bring him to the Pierce County Sheriff's Office? A. Yes, I did. Det. Lane and myself. There's two of us. Q. Okay. And what did you do with him there? A. We immediately took him to the detective division of the sheriff's office. Q. Did you talk to him at that time? A. Yes, I did, discussed these civil rights again. Q. And what did he say about the narcotics charge? A. He admitted that he had been in possession of the marijuana. Q. Did he give you any details as to this? A. Yes, he did. Q. Were these details reduced to writing? A. They were. Q. Who wrote the statement up? A. He gave the statement. I typed it as he give it. It started, the statement, at twelve-oh-five p.m. Q. Was anyone else present? A. No, there was not. Q. Okay. Now, when you finished with the statement, what did you do? A. Allowed the defendant McCoy to make a phone call to a friend. Q. And did he read the statement, did you let him read it? A. Yes, he did. Q. And he signed it? A. And he signed it. Q. Did he sign it in front of you? A. Yes. Q. In front of anyone else? A. Yes. Sgt. Berven witnessed this signing, witnessed the signature.

Appellant did not testify or offer any other evidence at this hearing. The court held that the confession was voluntarily given and admitted it in evidence. The signed confession stated, *inter alia,* that:

I have been advised of my civil rights which are guaranteed to me under the State and Federal Constitution. *I understand that I am entitled to an attorney if I want one and that if I do not have funds the Court will appoint an attorney to represent me at State expense. I know that I have a right not to say anything, and anything I might say can be used against me in court. . . .*
I have read the above statement in its entirety. It is a true and correct statement to the best of my knowledge and belief. (Italics ours.)

We conclude that the confession was voluntarily given. The appellant was fully advised of his constitutional rights including his right to remain silent at all times.

The appellant relies upon *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966), contending that he was not advised of his right to have counsel present at the time he signed the confession. The undisputed testimony of Officer Archer and the signed admission set out in the italicized statement above conclusively establish appellant was fully advised of his constitutional rights. However, assuming arguendo the advice was inadequate, the rule of *Miranda* does not here apply. Subsequent to the announcement of the *Miranda* rule, the Supreme Court in *Johnson v. New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 Sup. Ct. 1772 (1966), announced that the *Miranda* rule would apply prospectively as to trials commenced after June 13, 1966. The instant case was tried February 28, 1966, some 3½ months before the rule in the *Miranda* case became prospectively effective. We conclude, therefore, that the rule in the *Miranda* case is not here apropos.

Judgment is affirmed.

FINLEY, C. J., HUNTER and HAMILTON, JJ., and BARNETT, J. Pro Tem., concur.